# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TROY BRANNING, | : |
| --- | --- |
| Plaintiff, | : |
| v. | : 3:15-CV-1936 |
|  | : (JUDGE MARIANI) |
| WAYNE COUNTY, et al., | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 24) by Magistrate Judge Carlson, in which he recommends that Defendants' Motion for Summary Judgment (Doc. 14) be granted with respect to the *Monell* claim against Wayne County and all the official capacity defendants in Count II of the Amended Complaint,[1] but be denied in all other respects. Defendants have filed Objections to the R&R (Docs. 25, 26), to which Plaintiff responded (Doc. 28) and Defendants replied (Doc. 29). Plaintiff did not file any Objections to the R&R.

---

[1] The Magistrate Judge's R&R correctly perceived Count II of the Amended Complaint as one attempting to impose *Monell* liability against Wayne County and the other defendants named therein in their official capacities (*see* Doc. 24, at 16, n.6). Plaintiff has not disputed this characterization of Count II by the Magistrate Judge. Nor could he in light of the well-established case law that permits governmental entities to be liable for constitutional violations arising from the entities' official policies, practices, or established customs and which further treats claims against persons alleged to have acted in their official capacities as a suit against the government entity itself. *See e.g., Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)(citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114(1985)). Thus, the Magistrate Judge properly recommended the dismissal of Count II in its entirety.

On October 5, 2015, Plaintiff, Troy Branning, commenced the above-captioned action against Defendants Wayne County, Vicky Botjer, and Skip Martin. (Doc. 1). Plaintiff thereafter filed an Amended Complaint which included an additional count and added County Commissioners Brian W. Smith, Jonathan A. Fritz, and Wendell R. Kay as Defendants. (Doc. 11). Plaintiff's Amended Complaint sets forth the following Counts: First Amendment Retaliation (Count I) pursuant to 42 U.S.C. § 1983 against all Defendants; Inadequate/Supervision/Hiring/ Screening/Training (Count II) pursuant to § 1983 against all Defendants; Assault and Battery (Count III) against Botjer; Negligent Supervision/ Hiring/Training Violation of Common Law (Count IV) against all Defendants; and a second claim of First Amendment Retaliation (Count V) pursuant to § 1983 against all Defendants.

On June 23, 2016, the Defendants filed a Motion for Summary Judgment (Doc. 14) requesting that summary judgment be granted in their favor on all counts. The Court subsequently referred the motion to Magistrate Judge Carlson for the preparation of a Report and Recommendation on Defendants' pending motion. On May 11, 2017, the Magistrate Judge issued the R&R (Doc. 24) presently before the Court.

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those

2

portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Here, Defendants specifically "object to the portion of Magistrate Judge Carlson's Report and Recommendation denying Defendants' Motion for Summary Judgment on Plaintiff's Count IV for a state law claim of negligent failure to supervise, hire or train against Defendant Wayne County and Defendant County Commissioners" (Doc. 25, ¶ 6). Defendants argue that Wayne County and the County Commissioners, Smith, Fritz, and Kay, are immune from suit in Count IV pursuant to the Pennsylvania Political Subdivision Torts Claims Act ("PSTCA"). (Doc. 25, ¶¶ 8, 10). Defendants therefore request that the Court "reject the recommendation of Magistrate Judge Carlson . . . relative to Plaintiff's Count IV state law claim" and "grant Defendants' Motion for Summary Judgment on Plaintiff's Count IV state law claim and dismiss said claim in its entirety against all Defendants with prejudice." (Doc. 25, ¶ 18).[2]

Pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 *et seq.*, a local agency cannot be held "liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541. The Act provides for eight exceptions to

---

[2] It must be noted that although Magistrate Judge Carlson recommended that Defendants' motion for summary judgment be denied as to Count IV, he expressed "reservations about this claim", and specifically about whether the defendants may be entitled to immunity on this count pursuant to the PSTCA. However, because Defendants did not raise this issue in their motion and accompanying brief, "the Court [found] it would be inappropriate to weigh in on the defense, or its potential application to the plaintiff's claims against some or all of the defendants, without the benefit of any assertion of the defense or argument by the parties." (Doc. 24, at 23-24 n. 8).

3

this rule: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility services facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. Cons. Stat. Ann. § 8542(b). Additionally,

> [m]unicipal *employees* . . . are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment. 42 Pa. Cons. Stat. § 8545. However, there is an exception to this general rule: Employees are not immune from liability under § 8545 where their conduct amounts to "actual malice" or "willful misconduct".

*Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). The Pennsylvania Supreme Court has recognized willful misconduct as requiring a demanding level of fault. *Id.* "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" *Id.* (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). "Otherwise stated, 'the term "willful misconduct" is synonymous with the term "intentional tort."'" *Id.* As such, "even where a public employee acts with a degree of culpability equivalent to 'recklessness,' Pennsylvania law nevertheless affords him immunity." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 287 (3d Cir. 2006) (citing *Williams v. City of Philadelphia*, 569 A.2d 419, 421-422 (Pa. Commw. Ct. 1995)).

Plaintiff asserts that Defendants are not entitled to immunity in Count IV for two reasons: (1) Defendants failed to raise any entitlement to immunity pursuant to the PSTCA in their motion for summary judgment and accompanying brief; and (2) "the actual malice and willful misconduct exemptions to PSTCA immunity are applicable" in this action. (Doc. 28).

4

Plaintiff's first argument is without merit. The Pennsylvania Supreme Court has repeatedly made clear that immunity, including that provided by the PSTCA, is a non-waivable defense. See e.g., McShea v. City of Philadelphia, 995 A.2d 334, 341 (Pa. 2010) ("The clear intent of the [PSTCA] was to insulate the government from exposure to tort liability. Tort immunity is a non-waivable, absolute defense.") (internal citations omitted); Tulewicz v. Southeastern Pennsylvania Transp. Auth., 606 A.2d 427, 429-430 (Pa. 1992) (finding that "the defense of immunity is non-waivable."); In re Upset Sale of Props., 560 A.2d 1388, 1389 (Pa. 1989)). In the instant case, denying Defendants the opportunity to raise the defense of immunity under the PSTCA at this juncture, simply because they have not previously raised it, would create the incongruous result whereby, should one or more of the defendants be entitled to immunity, the Court would be forced to dismiss that defendant from the relevant claim pursuant to either a Federal Rule of Civil Procedure 50(a) motion at trial or on any post-trial motions should that defendant be found liable on a claim for which he/she/it are immune under the PSTCA.

The Court also finds Plaintiff's second argument, the applicability of the actual malice or willful misconduct exception, unpersuasive.

However, prior to addressing the applicability of this exception, the Court notes that, regardless of whether immunity applies under the PSTCA to each of the defendants, Count IV's broad inclusion of all defendants is inappropriate. Count IV alleges that all of the defendants, which necessarily includes Botjer, breached their duty of care to the plaintiff by hiring, and failing to supervise and train, Botjer. Logically, Botjer cannot be held liable for her

5

own hiring or failing to supervise or train herself. Therefore, Botjer must be dismissed from this Count. Furthermore, Martin cannot be held liable for failure to train and/or supervise Botjer. There is no record evidence that Martin, as Maintenance Director or Supervisor, was in any way responsible for hiring, supervising and/or training Botjer, the Chief County Clerk. In fact, the record evidence indicates that Botjer answered to the County Commissioners and was in a supervisory position over Martin. (*See* Botjer Dep. at 28:4-5) (stating that she is Martin's supervisor); (*see also, id*. at 8:8-9:4) (explaining that "[a]s Chief Clerk, I am the Administrative Officer for the County. Human resources. I supervise the business office. I arrange the calendar and agendas for the Commissioners. Represent the Commissioners at functions or events or committees if they are unable to attend or if they designate me to do that. I am an appointed person every time by the Commissioners.").

Because neither Botjer nor Martin may be held liable under Count IV, the only issue remaining is whether the County, Smith, Fritz, and/or Kay are entitled to immunity pursuant to the PSTCA.

Count IV of Plaintiff's Amended Complaint, entitled "Negligent Supervision/Hiring/ Training Violation of Common Law", sets forth the following allegations:

- "Defendants had a duty to protect Plaintiff from being abused by a public official and assaulted and were required to properly hire, train, and supervisor [*sic*] Defendant Botjer";

6

- "Defendants breached their duty when they failed to supervise Defendant Botjer although they had knowledge of her propensity to engage in threatening, violent or tumultuous behavior based on prior misconduct";

- "Defendants never trained Defendant Botjer not to assault co-workers or other persons";

- "Since Defendants knew about Defendant Botjer's prior misconduct, they had a duty to prevent the assault";

- "Defendants knew or should have known that allowing Defendant Botjer to work unsupervised and untrained would result in her assaulting someone";

- "Due to Defendants breaching their duty, the Plaintiff was assaulted."

(Doc. 11, ¶¶ 66-71).[3]

With respect to Wayne County, the County is entitled to immunity pursuant to the PSTCA. The Statute makes clear that, subject to the eight enumerated exceptions, the local agency itself is entitled to immunity. It is only the employees themselves who may not be entitled to immunity if their actions entail actual malice or willful misconduct. Here, Plaintiff does not dispute that none of the exceptions set forth in the PSTCA apply and only argues that the acts of certain defendants was willful. This is insufficient to overcome Wayne County's assertion of immunity. See e.g., Viney v. Jenkintown Sch. Dist, 51 F.Supp.3d 553, 557 (E.D.

---

[3] A review of these allegations demonstrates that Plaintiff misrepresents the basis of this Count. In response to Defendants' claim that they are entitled to immunity, Plaintiff argues that "terminating an employee because they reported a crime are [sic] acts of malice and willful misconduct." (Doc. 28, at 3). This argument is inapposite where, here, Count IV is premised on allegations that Defendants failed to supervise Botjer and train her not to assault co-workers. Count IV is not founded on any allegation of unlawful termination.

7

Pa. 2014) ("Pennsylvania courts have . . . concluded that section 8550 only abolishes immunity for willful misconduct which pertains to local agency employees ... and does not affect the immunity of local agencies") (internal quotation marks omitted); see also, Sanford, 456 F3d at 315 ("*Employees* are not immune from liability under § 8545 where their conduct amounts to 'actual malice' or 'willful misconduct'") (emphasis added).

The Court therefore turns to whether there is record evidence to create a triable issue of fact with respect to whether one or more of the County Commissioners, Smith, Fritz, and Kay, acted with actual malice or engaged in willful misconduct such that they would not be entitled to immunity.

Preliminarily, it is clear from the Amended Complaint that Count IV is premised on negligence. Plaintiff has styled the allegations in this Count as alleging a duty, breach of that duty by the Defendants, and a causal connection between the breach and injuries sustained by him. None of Plaintiff's allegations are premised on intentional conduct.

Moreover, Plaintiff does not dispute that none of the enumerated exceptions to the PSTCA apply here, instead arguing that "Defendants omitted a major exception that applies to the instant case" i.e. actual malice or willful misconduct. (Doc. 28, at 2). However, Plaintiff fails to cite to sufficient record evidence to support a claim that the conduct of Smith, Fritz, and/or Kay amounted to anything more than negligence or, at worst, recklessness.

As explained by Magistrate Judge Carlson,

> The plaintiff has supported this claim by noting that he had previously made County officials or other supervisory personnel aware that Ms. Botjer had previously behaved towards him in a manner that threatened violence. (Branning

8

> Dep. at 35:25-37:25) (claiming that Ms. Botjer attempted to slap him in 2013.) He also testified that he brought this incident to Defendant Smith's attention immediately afterward. (*Id.*, at 38:11-22.) This appears to form the basis of the plaintiff's claim that the County had been placed on notice regarding Ms. Botjer's propensity to resort to violence in the workplace.

(Doc. 24, at 25). Additionally, during Branning's deposition, he admitted that when he told Smith about the 2013 incident, Smith advised him to tell his supervisor and "then go through the chain of command." (Branning Dep. at 42:10-12). Branning does not assert that he was subject to any other assaults, or attempted assaults, by Botjer between 2013 and 2015.

Even assuming that one or more of the defendants were on notice that Botjer had attempted to slap Branning approximately two years prior to the "assault and battery" at issue in this action, this, without more, is insufficient to create a genuine dispute of material fact as to whether the defendants acted with actual malice or willful misconduct.

Plaintiff only cites to one case in support of his position that the negligent supervision claim should be allowed to proceed to a jury and that the willful misconduct and actual malice exception is applicable in the present case. (Doc. 28, at 2). However, *Cimino v. Dunmore*, 2005 WL 3488419 (M.D. Pa. 2005), is distinguishable from the present case. In *Cimino*, Plaintiff, a janitor, was both verbally and physically harassed by a Dunmore Borough Police dispatcher while she was cleaning the police station. At some point, the Chief of Police became aware that the dispatcher was engaging in this behavior and ordered a captain in the police department to record and review surveillance videos to "monitor the situation." However, although both the Chief and Captain saw video surveillance evidencing that Plaintiff was being harassed several times over the next few months, neither individual spoke to the police dispatcher about his

9

behavior or spoke to Plaintiff.[4] Neither the Chief of Police nor the Captain informed Plaintiff's private employer or any other Borough official or employee about the investigation or about the police dispatcher's behavior. Approximately two months after the Chief of Police first became aware of the possible misconduct, Plaintiff informed a different police captain of the harassment, which led to a more detailed investigation into the matter. One month later, the Borough suspended the police dispatcher. *Id.* at *1-4. The District Court found that the Chief of Police and the Borough Manager were not entitled to immunity pursuant to the PSTCA with respect to Plaintiff's negligent retention and supervision claim because "Plaintiff has presented sufficient evidence to create a genuine issue of material fact that [those individuals] were on notice of the harassment and knew that their failure to intervene would allow the harassment to continue or worsen." *Id.* at *12.

Assuming that the District Court in *Cimino* was correct in its determination, there are several key factual differences between that case and the present one. Unlike in *Cimino*, there is no record evidence that Branning was subjected to any repeated physical harassment by Botjer. Rather, Plaintiff has presented evidence of a single incident in 2013 which he alleges purportedly should have put all the Commissioners on notice that Botjer would strike him again. In contrast, in *Cimino*, the plaintiff was subject to repeated harassment of which at least one defendant was aware for several months. The Chief of Police was therefore on notice that the situation was continuing to occur, and possibly worsening. Here, there is no record evidence

---

[4] The Police Chief spoke to Plaintiff after first witnessing the police dispatcher put his arms around Plaintiff. Plaintiff denied that anyone was bothering her and the Police Chief never spoke to her again about the issue, instead ordering his Captain to review and monitor video surveillance when Plaintiff and the police dispatcher were working at the same time.

10

that Smith, or any other Commissioner, knew or had reason to believe that the situation would re-occur. Furthermore, in *Cimino*, the defendants did not offer help to the plaintiff or instruct her of possible actions she could take. In the present case, Branning admitted that when he told Smith about the 2013 incident, Smith advised him to tell his supervisor and "then go through the chain of command." (Branning Dep. at 42:10-12). Smith therefore did not ignore the situation, but instead attempted to help Plaintiff obtain some form of relief. That Smith did not himself take any further action or follow up with Plaintiff may constitute negligent behavior, but cannot be said to reach the level of "actual malice" or "willful misconduct."

As a result, because the PSTCA permits recovery against a local agency or its employee only for negligent acts that fall within the enumerated exceptions, which Plaintiff does not dispute are inapplicable in the present case, and Plaintiff has failed to point to any record evidence to create a triable issue with respect to whether the Commissioners' actions amounted to anything more than negligence, or even recklessness, Plaintiff's claims based on negligent supervision, hiring, and training are barred by the PSTCA. "Negligent hiring, training and retention of an unfit supervisor is not one of the negligent acts for which immunity is waived." *Joyner v. Sch. Dist. of Philadelphia*, 313 F.Supp.2d 495, 504 (E.D. Pa. 2004); *see also, Gines by Gines v. Bailey*, 1992 WL 394512, at *5 (E.D. Pa. 1992) (dismissing claims of negligent hiring, retention, and supervision as barred by the PSTCA).

In summary, the count for negligent hiring, supervision and training is a state law claim that does not fall within one of the eight exceptions to the PSTCA. Thus, the County is entitled to immunity and the Commissioners would only lose their immunity if their conduct amounted

11

to "actual malice" or "willful misconduct." Because both of these requirements necessarily require a higher level of fault than mere negligence, and Plaintiff has failed to produce any record evidence which may create an issue as to whether the actions of any of the Commissioners met the requisite level of fault, the claim fails as a matter of law and Defendants are entitled to summary judgment on Count IV.

### III. CONCLUSION

For the reasons set forth above, upon *de novo* review of the R&R, the Court will sustain Defendants' Objections, therefore dismissing Count IV of the Complaint, and adopt the pending R&R in all other respects.[5]

Robert D. Mariani
United States District Judge

---

[5] Although the Court adopts the Magistrate Judge's recommendation in all other respects, the Court wishes to make clear that, with respect to Counts I and V of the Amended Complaint, to the extent that Plaintiff has attempted in those Counts to assert claims against Botjer, Martin, Smith, Fritz, and Kay, in their official capacities, such claims are dismissed as superfluous in light of the pending *Monell* claims against Wayne County in those Counts. Thus, only the claims against the County and the aforementioned defendants in their individual capacities remain for trial.

12